```
                   UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION
```

Roosevelt Reed,

               Plaintiff,

vs.                          Case No. 2:09-cv-411-FtM-29DNF

George Sheldon, Secretary, Department of Children and Family Services, Suzanne Kline, Ph.D., Director of SVP Program, The GEO Group, their agents, officers, employees, successors in office and persons acting in concert or in participation in the matters complained of herein, individually and in their official capacities, GEO employees consisting of all females employed at the Florida Civil Commitment Center who perform job functions in contact positions with male residents, in their official capacities, and individually,

               Defendants.
_____


## **ORDER OF DISMISSAL**

This matter comes before the Court on review of Plaintiff's *pro se* civil rights complaint, filed pursuant to 42 U.S.C. § 1983 (Doc. #1, Complaint) on June 25, 2009. Plaintiff, who is involuntarily civilly confined at the Florida Civil Commitment Center ("FCCC") pursuant to the Involuntary Civil Commitment of Sexually Violent Predators Act, §394.910-394.931, Fla. Stat., known as the Jimmy Ryce Act, seeks to proceed in this action *in forma pauperis*. See Affidavit of Indigence (Doc. #2).

**I.**

Plaintiff also has pending before the Court an "Emergency Motion for Temporary Restraining Order and/or Emergency Order Prohibiting Plaintiff Housing to the New FCCC Facility Which Opened April 6, 2009," which he filed on June 25, 2009 (Doc. #3, "Motion for TRO"). The Court undertook a review of the Motion for TRO upon receipt, and determined that it did not warrant exigent disposition. In his Motion for TRO, Plaintiff seeks to enjoin the Defendants from transferring him to the newly constructed FCCC facility. Motion for TRO at 2. According to the address Plaintiff provided on his Affidavit of Indigence (Doc. #2), filed the same day as the Motion, Plaintiff has already been transferred to the newly constructed facility at the time he filed his Motion. Consequently, Plaintiff's request for injunctive relief is moot. Smith v. Allen, 502 F.3d 1255, 1266 (11th Cir. 2007).

**II.**

Despite Plaintiff's non-prisoner status, before the Court grants Plaintiff *in forma pauperis* status and directs the U.S. Marshal to serve his Complaint on Defendants, the Court is required to review Plaintiff's Complaint to determine whether the complaint is frivolous, malicious or fails to state a claim.[1] See 28 U.S.C.

---

[1]The Court recognizes that certain portions of the Prison Litigation Reform Act are not applicable to Plaintiff due to his status as a civil detainee. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). The United States Court of Appeals for the Eleventh Circuit previously found that a district court did not err
(continued...)

§ 1915(e)(2)(B)(i)-(iii). In essence, § 1915(e)(2) is a screening process, to be applied *sua sponte* and at any time during the proceedings. The Court, nonetheless, must read Plaintiff's *pro se* allegations in a liberal fashion. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003).

A complaint filed *in forma pauperis* which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not automatically frivolous. Neitzke v. Williams, 490 U.S. 319, 328 (1989). Rather, the test for granting a § 1915 dismissal is whether the claim lacks arguable merit either in law or fact. Id. at 325; Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002); Bilal v. Driver, 251 F.3d 1346 (11th Cir. 2001). Additionally, § 1915 requires dismissal when the legal theories advanced are "indisputably meritless," Nietzke, 490 U.S. at 327; when the claims rely on factual allegations which are "clearly baseless," Denton v. Hernandez, 504 U.S. 25, 32 (1992); or, when it appears that the plaintiff has little or no chance of success. Bilal, 251 F.3d at 1349.

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges,

---

[1](...continued)
by dismissing a Complaint filed by a civil detainee for failure to state a claim under the *in forma pauperis* statute, 28 U.S.C. Section 1915 (e)(2)(B). Id. at 1260. Other Courts have also found that section 1915(e)(2)(B) is not limited to prisoners, but applies to all persons proceeding *in forma pauperis*. See Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001).

or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

The State of Florida enacted the Jimmy Ryce Act, by which a person who is determined to be a sexually violent predator[2] is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Fla. Stat. § 394.917(2). The Act was promulgated for the dual purpose "of providing mental health

---

[2] A "sexually violent predator" is defined by the Act as any person who:

> (a) has been convicted of a sexually violent offense; and
> (b) suffers from a mental abnormality or personality disorder that makes the person more likely to engage in acts of sexual violence if not confined in a secure facility for log-term control, care, and treatment.

Fla. Stat. § 394.912(10) (2002).

-4-

treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So.2d 93, 112 (Fla. 2002); see also Kansas v. Hendricks, 521 U.S. 346 (1997) (holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive).[3]  Thus, residents at the FCCC are considered "totally confined," and subject to certain internal regulations much like those established by the Florida Department of Corrections. See Fla. Stat. § 394.912(11).

A person who is civilly committed is in a position analogous to a criminally confined prisoner. See Pullen v. State, 802 So. 2d 1113, 1119 (Fla. 2001)(in that "the curtailment of the fundamental right of liberty is implicated in both criminal proceedings and involuntary civil commitments").  Nevertheless, an individual who has been involuntarily civilly committed has "liberty interests under the due process clause of the Fourteenth Amendment to safety, freedom from bodily restraint, and minimally adequate or reasonable training" as required to ensure safety and freedom from restraint. Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996)(citing Youngberg v. Romeo, 457 U.S. 307, 322 (1982)).  See also Lavender v. Kearney, 206 Fed. Appx. 860, 862 (11th Cir 2006).  Thus, while residents at the FCCC are subject to such internal regulations,

---

[3] "Florida's Ryce Act is similar to the Kansas Sexually Violent Predator Act in many respects. See Kan. Stat. Ann. § 59-29a01-a20 (Supp. 2001)." Westerheide, 831 So. 2d at 99 n.6.

they are due a higher standard of care than those who are criminally committed. See id. Indeed, the Eleventh Circuit Court of Appeals has held that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Id.

The United States Supreme Court has recognized that not every restriction imposed during confinement "amounts to punishment in the constitutional sense." Bell v. Wolfish, 441 U.S. 520, 537 (1979). Whether the restriction is incident to a legitimate governmental purpose or whether the restriction is imposed as punishment, is determinative of whether the particular restriction amounts to punishment under the Due Process Clause. Id. at 538. Absent an institution's expressed intent to punish a detainee, this determination "generally will turn on whether there is an alternate purpose rationally connected to the restriction," and whether the restriction appears excessive based on the alternate purpose supporting it. Id. In other words, if a condition or restriction is "reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id. at 539-40. However, if it "is not reasonably related to a legitimate goal - - if it is arbitrary or purposeless- a court may infer that the purpose" is punishment. Id. at 539.

Nonetheless, FCCC staff have a duty to protect the civilly detained from violence at the hands of the other civilly detained

residents. See Farmer v. Brennan, 511 U.S. 825, 833 (1994)(applying analysis in a prison context).[4] However, not every injury "translates into a constitutional liability." Id. at 834.

The Supreme Court has soundly rejected the possibility of *respondeat superior* as a basis of liability in § 1983 actions. Monell v. Dep't of Soc. Serv., 436 U.S. 659, 690-692 (1978). Instead, supervisory liability can be imposed under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Absent personal participation by a defendant, a plaintiff must show an affirmative causal connection between the defendant's acts and the alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995). The causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so [,]" or when a custom or policy of the supervisor results in deliberate indifference to constitutional rights. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)(quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)). "The deprivations that constitute

---

[4]Case law that has developed under the Eighth Amendment sets forth the contours of the due process rights of the civilly committed. Dolihite v. Maughon, 74 F.3d at 1041.

widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. Alternatively, facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that they would do so and failed to stop them establishes a causal connection. Cottone, 326 F.3d at 1360 (quoting Gonzalez, 325 F.3d at 1234) (remaining citations omitted).

**III.**

The Court takes judicial notice that Plaintiff filed an action raising similar claims in this Court, in which Plaintiff sought class certification, that was dismissed. See case number 2:09-cv-219-99DNF. As in his previous complaint, Plaintiff generally complains about the Department of Children and Families' "newly constructed" facility as not being "a proper secure or forensic facility" as required by State statute. See generally Complaint. Plaintiff identifies the following six claims in his Complaint: (1) Fourteenth Amendment violation stemming from the fact that the facility is not secure because 80% of the staff are female and Supreme Court precedent disallows their employment; (2) Fourteenth Amendment violation stemming from the fact that the overpopulation of female staff impacts Plaintiff's safety; (3) Fourteenth Amendment violation stemming from the fact that the facility is not a secure forensic facility but is a correctional institution; (4) Fourteenth and Fourth Amendment violations stemming from the fact

the overpopulation of female staff impacts Plaintiff's privacy rights; (5) Fourteenth and Fourth Amendment violations stemming from the fact 80% of the residents are "aggressive homosexuals" and 90% of them are HIV positive; and (6) Fourteenth and Fourth Amendment violations stemming from the fact that the facility is not secure in that 40% of the female staff engage in some form of prostitution, and 35% of these female staff are HIV positive. See generally Complaint at 3-5.

In support of his claims, Plaintiff avers that females comprise "80% of the staff," who "by their gender, necessarily mak[e] this facility physically non-secure." Id. at 7. Plaintiff avers that "to offset the absence of male staffs [sic] at [the] FCCC, GEO Officials have implemented policies of hiring resident enforcers or 'hit men' as a measure to protect the overabundance of female staff working the dorms and compensate for the lack of male staff." Id. at 8, ¶25. Plaintiff states that these "rogue" residents are permitted "to roam all areas" of the new facility "for interaction with female staff or drug trafficking." Id. at ¶26. "Female staff usually pay these residents for their muscle activity by means of sex, drugs, money, or all three to protect them (not residents) . . ." Id. at ¶27.

Plaintiff states that on March 20, 2009, he was raped inside the secure management wing at the old FCCC facility by another

resident, SJ,[5] who is HIV positive.  Id. at ¶45.  Plaintiff concludes that the "overpopulation and over-concentration of female staff" "caused Plaintiff to be victimized by sexual assaults by other residents."  Id. at ¶44-45.  Plaintiff states that he is "currently housed in the same dorm" as SJ and "there is nothing to prevent [SJ] from raping the Plaintiff again is he chooses to do so "because the unit is "manned by only one woman or man each shift."  Id. at ¶31.

Plaintiff further complains about the way female staff dress and conduct themselves.  Id. at ¶¶77-78.  He suggests that their appearance and actions result in wide-spread masturbation and other sexually aggressive behavior for which residents are disciplined.  Id. at 79-96.  Plaintiff states that TST Summerset falsely "accused" him of being visible from the control booth while masturbating.  Id. at ¶85.  He opines that if "opaque film" was installed on the "control room windows" the problems attendant to the masturbation issue would "cease."  Id. at ¶83.

Plaintiff equates the new facility to a "closet 'penal institution.'"  Id. at ¶52.  Plaintiff claims that the new design is more restrictive than the former facility and results in residents being isolated.  Id. at ¶¶47-49.  Plaintiff avers that the new facility is equipped with "1400 observations cameras throughout the segregated pod housing areas."  Id. at ¶55.

---

[5]The Court will refer to resident identified by Plaintiff as "SJ" instead of by his legal name.

Plaintiff surmises that he will only have "two hours of daily sunlight fresh-air breaks." Id. at ¶57. As a result of its design, Plaintiff submits that residents will suffer "acute depression, neuropsychological problems, acute deprivation of environmental and sensory stimuli, seasonal affective disorders, chronic emotional impairment, and other losses of sensory deficiencies." Id. at ¶62. Plaintiff concludes that contrary to the promised "state of the art facility," residents are "living in conditions similar to the 'Gitto' detainees." Id. at ¶¶64-66.

Plaintiff states that the HIV virus is widespread in the facility and that homosexual behavior is not discouraged by staff. Id. at ¶¶91-104. He claims that "Defendants" have failed to perform "affirmative acts necessary to remove the disease at this facility since its inception." Id. at ¶109.

As relief, Plaintiff seeks compensatory and punitive damages, as well as various forms of injunctive relief. Id. at 21-23. In particular, Plaintiff requests that the Court close the new facility, mandate a maximum two-year commitment cap on confinement, transfer Plaintiff to a new facility, and prohibit the Defendants from any federal grant monies. Id. at ¶¶G-O.

**IV.**

At the outset, the Complaint fails to allege any personal participation by any Defendant and any alleged wrong doing. Instead, the bulk of the Complaint consists of purported generalized deficiencies in the design, operation and management of

-11-

the FCCC.  Other than the March 20, 2009 incident discussed below, Plaintiff does not allege any injury or damage as a result of the purported deficiencies.

While Plaintiff asserts that the newly constructed facility is a "prison" due to its physical confines, he does not allege that the facility's designs were implemented to punish, as opposed to ensure security within the facility.  In fact, Plaintiff suggests that the resident population at the FCCC renders the facility inherently "not secure."  The Florida legislature, in its statement of "findings and intent," explained that the Act was aimed at "a small but extremely dangerous number of sexually violent predators . . . who do not have a mental disease or defect that renders them appropriate for involuntary treatment under the Baker Act (§§ 394.451-394.4789, Fla. Stat.)." Fla. Stat. § 94.910 (2000).  Thus, it is the very population, which the Act was promulgated to confine, that Plaintiff contends makes the facility "not secure."

To the extent that Plaintiff attributes liability to any Defendant as a result of the March 20, 2009 rape, Plaintiff fails to allege any facts that any of the Defendants were deliberately indifferent to a substantial risk of Plaintiff's safety. <u>Purcell v. Toombs County, Ga.</u>, 400 F.3d 1313, 1319 (11th Cir. 2005). "Deliberate indifference is not the same thing as negligence or carelessness."  <u>Maldonado v. Snead</u>, 168 Fed. Appx. 373 (11th Cir. 2006)(citing <u>Ray v. Foltz</u>, 370 F.3d 1079, 1083 (11th Cir. 2004)).

"Merely negligent failure to protect" an inmate from an attack does not give rise to a § 1983 claim. Carter v. Galloway, 352 F.3d 1346, 1350 (11th Cir. 2003).

Rather, a plaintiff must demonstrate that the defendant was aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists and that the prison official drew that inference. Purcell, 400 F.3d at 1319-20; Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003). In other words, to show that an official had subjective knowledge, the court is to inquire whether the defendant was aware of a "particularized threat or fear felt by [the plaintiff]." Carter, 352 F.3d at 1350. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" and does not give rise to a constitutional violation. Farmer, 511 U.S. at 838. Whether an official had requisite knowledge is a question of fact that may be demonstrated by circumstantial evidence. Id. at 842. Consequently, evidence of past attacks which were "long-standing, pervasive, well-documented, or expressly noted by [ ] officials in the past" may be sufficient to find that the official had actual knowledge. Id. However, general knowledge that a particular inmate is a problem inmate with a well-documented history of prison disobedience who is prone to violence is not sufficient. Carter, 352 F.3d at 1349. See also McBride v. Rivers, 170 Fed. Appx. 648 (11th Cir. 2006).

Here, the Complaint does not allege that any Defendant had any specific or general knowledge that Plaintiff was an intended target of resident SJ. The Complaint is completely devoid of any facts that Plaintiff told any of the Defendants that he felt threatened by resident SJ prior to the incident, or that he even reported the rape by SJ to any defendant after the incident. Thus, the Complaint fails to alleges any facts from which an inference could be drawn that a substantial risk of serious harm existed and that any defendant drew that inference.

To the extent that Plaintiff attributes the causation for his rape by SJ on the Defendants' alleged policy to over-populate the staff with females, the Court finds such an argument tenuous and without merit. See Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S., 397 412 (1997)(rejecting section 1983 liability attributed to a municipality's hiring practices finding that the particular injury must be the "plainly obvious consequence of the hiring decision"); McDowell v. Brown, 392 F.3d 1283, 1291 (11th Cir. 2004)(noting that hiring policy must be taken with the "requisite degree of culpability . . . with deliberate indifference to its known or obvious consequences."). The Court finds implausible the suggestion that Defendants would implement a policy to hire a majority of female staff with the intent to perpetuate resident rapes.

While Plaintiff claims that he was "accused" by TST Summerset of "masturbating," Plaintiff does allege that any disciplinary

action was taken against him. Complaint at 18, ¶¶85-88. Instead, Plaintiff argues that he has a constitutional right to privacy in "his cell" and cannot be "compelled to masturbate for female staff enjoyment." Id. at ¶84 and ¶89. While this Circuit has determined that prisoners "retain a *limited* constitutional right to bodily privacy," this right must be evaluated on a "case-by-case basis." Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993); Boxer v. Harris, 437 F.3d 1107 (11th Cir. 2006). This right to privacy is subject to further limitations that are reasonably related to "legitimate penological interests." Turner v. Safely, 482 U.S. 78 (1987). As noted earlier, Plaintiff is not a "prisoner" for purposes of the PLRA, Troville v. Venz, 303 F.3d 1256, but he is nonetheless confined to a "secure facility." Thus, the living area to which Plaintiff is assigned at the FCCC, albeit not a cell, is not protected by the Fourth Amendment. Hudson v. Palmer, 468 U.S. 517 (1984). Plaintiff cannot reasonably argue that he has a legitimate "expectation of privacy" in an area that is visible from the control booth. O'Rourke v. Hayes, 378 F.3d 1201 (11th Cir. 2004).

Further, this Court notes that the Supreme Court has determined that "a right to privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." Hudson, 468 U.S. at 527-28. Consequently, to impose a blanket prohibition against FCCC

officials from being able to see into a resident's living areas is inherently inconsistent with the FCCC's needs of ensuring security and implementing rules and regulations. Block v. Rutherford, 468 U.S. 576 (1984). Consequently, the Court finds Plaintiff has not articulated a Fourth Amendment privacy violation.

Finally, Plaintiff's claims of future potential harm due to insufficient sunlight or isolation are speculative and do not present a case or controversy. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). In particular, Plaintiff alleges no injury in fact to invoke this Court's jurisdiction. DiMaio v. Democratic Nat. Comm. 530 F.3d 1299, 1301-1302 (11th Cir. 2008).

ACCORDINGLY, it is hereby

**ORDERED:**

1. Plaintiff's "Emergency Motion for Temporary Restraining Order and/or Emergency Order Prohibiting Plaintiff Housing to the New FCCC Facility Which Opened April 6, 2009" (Doc. #3) is **DENIED as moot.**

2. Plaintiff's Complaint (Doc. #1) is **DISMISSED**, without prejudice.

3. The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions and close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___1st___ day of September, 2009.

*/s/ John E. Steele*
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record